# EXHIBIT E

General Motors

Motors Holding

***From The Desk Of: Tim Rinke***

January 21, 2011

Glen,

Re: Follow Up Letter to Accounting System Examination review held on December 14, 2010

As a follow up to my letter to you dated December 21, 2010, this letter is a recap of our discussion held on Tuesday, January 4, 2011 at the dealership, regarding the items that were requested of you or your dealership personnel in order to finalize the file.

**Life Insurance**

*December 21 Request*; In order to establish the holder of the life insurance policy, you are to contact NADA to obtain a copy of the policy.

*January 4 Discussion*; You advised me that Karen Bauer had contacted NADA and requested a copy of the insurance policy. Karen stated that it may take several days to receive. It was agreed that you and Karen would continue to work with NADA to obtain a copy in order to establish the holder of the policy.

**Used vehicles**

*December 21 Request*; In order to properly evaluate the used vehicle inventory, it will be necessary to produce evidence from the agreed upon valuation guide, which is NADA, of the market value of all the vehicles over 60 days old as of December 31, 2010.

*January 4 Discussion*; Matter discussed and agreed to.

**Parts inventory**

*December 21 Request*; The review revealed that there is over $38,000 in parts inventory that is over 12 months old. Included in that amount are RIM parts. In order to establish the amount of obsolescence, it is necessary to determine which parts are returnable under the RIM program. A value for the remaining parts will then need to be established. Consequently your parts manager will need to distinguish the returnable parts from the rest and he is to provide a list of non-returnable parts.

*General Motors LLC*
*Motors Holding*

*39 Old Ridgbury Road*
*Danbury, CT 06810*

*203-790-3800*
*Fax 203-743-7916*

*January 4 Discussion*; Matter discussed and agreed to.

**Work in process**

*December 21 Request*; As you know, the work in process has increased substantially to around $18,000 which does not make sense with 8 or 9 technicians. The root cause of this problem has not been identified at this time. It is imperative that a thorough inventory of the work in process be taken and documented as of December 31, 2010, as well as all the other miscellaneous inventories that you do on a monthly basis.

*January 4 Discussion*; Matter discussed and agreed to.

**Accrued liabilities and prepaid expenses**

*December 21 Request*; All accrued liabilities and prepaid expenses are to be properly substantiated as of December 31, 2010.

*January 4 Discussion*; Matter discussed and agreed to.

**Travel and entertainment expenses**

*December 21 Request*; You explained that the supporting documents from the American Express credit card statements were lost during an event that occurred at the Patterson facility. In order to comply with IRS requirements and enable us to properly review the documentation, you need to contact the respective vendors or merchants to provide the actual receipts for each charge on the American Express statements dated May 14 to the current statement. If any expenses are found to be personal in nature or for business other than Superior Chevrolet, you will be required to reimburse the dealer company.

As you know, this issue has been previously discussed with you. Consequently, from this point forward, all travel and entertainment expenses from any dealership personnel, including you, have to be properly substantiated, including receipts, and identifying individuals attending and the purpose of meetings. This is standard operating procedure as set out in Board meetings since inception. Failure to comply with this policy may result in chargebacks to the individuals. You are also reminded that any travel or entertainment expense over $350 requires Board of Director approval.

*January 4 Discussion*; You asked how the May 14 date was established. In speaking with Mrs. Vandenburg, she advised that this was the last date of available records. Previous records were destroyed in flood at the old Patterson site. You were able to provide two (2) statements covering the periods of November and December 2010. You were reminded that you were still responsible to provide the balance of the statements and supporting documentation for the charges going back to May 14, 2010.

**Wachovia Loan**

*December 21 Request*; Upon review of the Wachovia money market statement you explained that you had encountered some difficulties with the bank official that was handling the transactions concerning the GM working capital loan to Superior and your funds on deposit with Wachovia. You mentioned that the $150,000 amount identified as paid to Autostar was wrong and that it should have been $120,000. A letter dated August 26, 2010 from Autostar to Superior Chevrolet (that should have been addressed to the owner of the Patterson real estate) stipulates that the amount to be applied against the loan is $150,000 and not $120,000 as you claim.

Further review of the Wachovia Money Market statement indicates that the three transactions we discussed are either Patterson transactions or personal transactions. These transactions should have been recorded in the appropriate bank accounts, therefore avoiding any co-mingling of funds with those belonging to Superior Chevrolet.

As you know, co-mingling of funds between you, Patterson and Superior is unacceptable; it opens the door to potential self-dealing activities and is, therefore, prohibited. The $30,000 receivable, whether substantiated or not, is unrelated to Superior Chevrolet, Inc. Therefore, you need to reimburse the $30,000 receivable to the dealer company on or prior to December 31, 2010.

*January 4 Discussion*; This matter was resolved pursuant to your payment of $30,000 to Superior Chevrolet on December 30, 2010.

**Lines of credit from Bank of America**

*December 21 Request*; We discussed at length the three different lines of credit from Bank of America. It was established that the total balance of these accounts was $107,570.06 as of September 30, 2010. Additional charges or payments may have been incurred since then. You agreed that these balances are old and pertain to the previous Superior dealership, the new Superior Chevrolet, and/or the Patterson dealership. ) Had these liabilities been known at the time of inception of the new Superior Chevrolet, the purchase price could have been reduced. However, it was not disclosed at that time. It is imperative at this point to determine the nature of these charges for which there are several possible treatments:

1. For charges incurred for the benefit of Patterson, whether capital expenditures or expenses: The balance owing on these amounts needs to be paid by Patterson. The amounts paid by the new Superior Chevrolet on behalf of Patterson needs to be reimbursed to the dealer company.
2. For charges incurred for the old Superior Chevrolet that are capital expenditures: The assets and the associated depreciation needs to be recorded in the books of the dealer company as if they had been recorded at inception in the stock purchase transaction.
3. For charges incurred for the old Superior Chevrolet that are considered expenses: The amounts paid by the new Superior Chevrolet on behalf of the old Superior Chevrolet need to be reimbursed to the dealer company.

4. For charges incurred for the new Superior Chevrolet that are considered capital expenditures: The assets and the associated depreciation need to be recorded in the books of the dealer company.
5. For charges incurred by the new Superior Chevrolet that are considered expenses: These items need to be expensed.

This is another situation of co-mingling of funds and is a violation of the Motors Holding Stockholders Agreement. Consequently, you must provide proper documentation of copies of the Bank of America statements, since inception of these accounts, as well as the associated receipts for each charge on the statement relevant to the old and new Superior Chevrolet operations.

*January 4 Discussion*; Your payment of $36,900 to Superior Chevrolet was reviewed as outlined in your letter to the Board of Directors dated December 30, 2010. While the payment was accepted, you were reminded that copies of the statements and supporting documentation was still required in order to reconcile accounts. You advised that you felt the accounts were settled and there was no need to provide copies of statements.

Please note that while MH understands your position, our position is that the matter is not closed until we have the appropriate documentation to reconcile the balance. That is, copies of statements to verify the amounts actually paid from the dealership together with invoices to support any expenditures that are related to Superior (such as the carpeting referenced in your December 30 letter).

**Lawyer's invoices**

*December 21 Request*; A review of the lawyer's invoices revealed that there could have been some charges relating to Patterson or the old Superior Chevrolet. The lawyer explained that he believed that 90% of the billings were associated with the new Superior. We are asking the lawyer to provide the dealership a letter stating the above and also include a statement that future billings will be itemized between dealerships.

*January 4 Discussion*; Matter resolved per December 22, 2010 letter from Elliot Wiesner, agreeing to itemize billings between dealerships.

**Adjusting entries**

*December 21 Request*; During the meeting, we reviewed the adjusting entries proposed by Mrs. Vandenburg. The Board agreed that, in many instances, the amounts being proposed as adjustments were no longer the correct amounts. However, the Board also agreed that these entries are required. In order to properly reflect the financial situation of the dealership as of **December 31, 2010** and properly consolidate these with those of General Motors LLC, we are going to proceed with the following:

- A copy of the proposed entries is hereby attached for your reference as of September 30, 2010.

- Mrs. Bauer will record the entries for which the correct amount can be identified immediately.
- **<u>Any documentation required to substantiate the proposed entries for which the amount is to be adjusted, as well as the documentation mentioned in the above comments, is to be gathered prior to January 3rd, 2011</u>**.
- Instead of having Mrs. Vandenburg communicate with Mrs. Bauer electronically, it was decided it would be much more efficient to have Mrs. Vandenburg travel to the dealership during the week of January 3rd, 2011, to assist Mrs. Bauer in the recording of these entries. This will also ensure that the entries have all been posted correctly and are reflected in the December 2010 Operating Report.

As you can see, there is a lot of work involved in fulfilling the above requirements. You must understand the importance of receiving this information by January 3, 2011, as the intent is to produce an Operating Report as of December 31, 2010, that will reflect an accurate financial situation of the dealer company. We trust that you will fulfill your obligations as President, Director and Shareholder of Superior Chevrolet. Meanwhile, should you have questions regarding the above, please do not hesitate to contact me.

*<u>January 4 Discussion</u>*; Nancy Vandenburg is now at the store assisting Karen Bauer with finalizing adjusting entries to be included in December 2010 financial statement.

The Meeting Minutes of December 14 were discussed and I advised that they will be circulated upon finalization of the audit adjustments to be made in early January.

Regards,

Tim

cc: Christian Richer
Nancy Vandenburg
Tom Doktorcik
Valerie Schuster
Eric Peterson