## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

GLEN W. WEST, SR.,

               Plaintiff,

       v.

GENERAL MOTORS, LLC,

               Defendant.

Civil Action No. 11-CV-819 (JAP)(DEA)

---

**PLAINTIFF GLEN W. WEST, SR.'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT GENERAL MOTORS LLC'S MOTION TO COMPEL ARBITRATION AND TO DISMISS PLAINTIFF'S VERIFIED COMPLAINT OR, IN THE ALTERNATIVE, STAY THE ACTION, AND IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR EXPEDITED DISCOVERY**

---

               **SAIBER LLC**
               18 Columbia Turnpike, Suite 200
               Florham Park, New Jersey 07932
               Tel: (973) 622-3333

               *Attorneys for Plaintiff*
               *Glen W. West, Sr.*

On the Brief,
      Marc E. Wolin
      Una Y. Kang

## TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ...................................................................................1

PROCEDURAL HISTORY...........................................................................................1

FACTUAL BACKGROUND .........................................................................................2

    The 2010 Dealer Sales and Service Agreement.............................................................2

    The 2008 Stockholders Agreement and Arbitration Agreement ...........................................5

    The 2010 Stockholders Agreement...........................................................................5

LEGAL ARGUMENT.................................................................................................6

    I.    The Arbitration Agreement Does Not Govern West's
        Claims Against GM ........................................................................................6

        A.    The Scope of West's Claims Do Not Fall Within
            the Arbitration Agreement ............................................................................7

    II.    The Federal Arbitration Act Does Not Preclude This Court's
        Ability to Consider and Grant Preliminary Injunctive Relief
        Under the NJFPA.......................................................................................13

    III.    West is Entitled to Expedited Discovery ...............................................................13

CONCLUSION.......................................................................................................20

# TABLE OF AUTHORITIES

**PAGE**

*AT & T Technologies, Inc. v. Communications Workers of America,*
  475 U.S. 643, 106 S. Ct. 1415 (1986)..................................................................8

*Arciniaga v. General Motors Corp.*
  460 F.3d 231 (2d Cir. 2006).........................................................................12

*Atkinson v. Sinclair Refining Co.,*
  370 U.S. 238, 82 S. Ct. 1318 (1962)..................................................................8

*Atlantic City Coin & Slot Service Co., Inc. v. IGT,*
  14 F. Supp. 2d 644 (D.N.J. 1998)................................................................19, 21

*Atlantic City Racing Association v. Sonic Financial Corp.,*
  90 F. Supp. 2d 497 (D.N.J. 2000) ..................................................................16

*Beilowitz v. General Motors Corp.,*
  233 F. Supp. 2d 631 (D.N.J. 2002) ................................................................19

*Better Packages, Inc. v. Zheng,*
  2006 WL 1373055 (D.N.J. May 17, 2006) ....................................................19, 21

*Central Jersey Freightliner, Inc. v. Freightliner Corp.,*
  987 F. Supp. 289 (D.N.J. 1997) ....................................................................17

*Darrick Enterprises v. Mitisubishi Motors Corporation,*
  2007 WL 2893366 (D.N.J. 2007) ...................................................................10

*Entertainment Tech., Corp. v. Walt Disney Imagineering,*
  2003 WL 22519440 (E.D.Pa. Oct. 2, 2003)....................................................21

*First Options of Chicago, Inc. v. Kaplan,*
  514 U.S. 938, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995)....................................8

*Fit Tech, Inc. v. Bally Total Fitness Holding Corp.,*
  374 F.3d 1 (1st Cir. 2004)...................................................................12, 14, 16

*Gelardi Corp. v. Miller Brewing Co.,*
  421 F. Supp. 233 (D.N.J. 1976) ....................................................................24

*Gibbs ex Rel. Gibbs v. Carnival Cruise Lines,*
  314 F.3d 125 (3d Cir. (N.J.) 2002) ..................................................................9

*GucciAmerica, Inc. v. Daffy's, Inc.*,
  2000 WL 1720738 (D.N.J. Nov. 14, 2000) ....................................................20

*Instructional Systems, Inc. v. Computer Curriculum Corporation*,
  130 N.J. 324 (1992) ...............................................................................................9

*Kavanaugh v. Ford Motor Co.*,
  353 F.2d 710 (7th Cir.1965) .................................................................................10

*Lanza v. New Global Communications, Inc.*,
  2006 WL 2759215 (N.J. Super. Ch.. Oct. 21, 2005) ....................................23

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor*,
  194 F.R.D. 618 (N.D.Ill. 2000) ...................................................................20, 21

*Notaro v. Koch*,
  95 F.R.D. 403 (S.D.N.Y. 1982) ...........................................................................19

*Ortho Pharmaceutical Corp. v. Amgen, Inc.*,
  882 F.2d 806 (3d Cir. (Del.) Aug. 17, 1989) ..................................................17

*P.V. ex rel. T.V. v. Camp Jaycee*,
  197 N.J. 132 (2008) ................................................................................................9

*Philadelphia Newspapers Inc. v. Gannett Satellite Information Network.*,
  1998 WL 404820 (E.D.Pa. July 15, 1998)......................................................21

*Penske Logistics, Inc. V. KLLM, Inc.*,
  285 F. Supp. 2d 468 (D.N.J. 2003) ....................................................................14

*Performance Unlimited, Inc. v. Questar Publishers, Inc.*,
  52 F.3d 1373 (6th Cir. 1995) ...............................................................................17

*Perry v. Thomas*,
  482 U.S. 483, 107 S. Ct. 2520, 96 L. Ed. 2d 426 (1987).................................7

*Saturn of Denville v. General Motors Corp.*,
  2009 WL 1545559 (D.N.J. May 29, 2009) .......................................................24

*Semmes Motors, Inc. v. Ford Motor Co.*,
  429 F.2d 1197 (2d Cir. 1970).............................................................................24

*Shell Oil Company v. Marinello*,
  63 N.J. 402 (1973) ................................................................................................11

*United Steelworkers v. Warrior and Gulf Navigation Co.*,
 363 U.S. 574, 80 S. Ct. 1347 (1960)...............................................................8

*Verizon New Jersey, Inc. v. DMJM Harris, Inc.*,
 2009 WL 1283173 (D.N.J. May 1, 2009)......................................................16

*Westfield Centre Serv. Inc v. Cities Serv. Oil Co.*,
 86 N.J. 453 (1981) .............................................................................................10

## <u>STATUTES</u>

9 U.S.C. § 4 ................................................................................................................8

Fed. R. Civ. P. 26 ....................................................................................................18

Fed. R. Civ. P. 26(d) .............................................................................................18

Fed. R. Civ. P. 30(a) .............................................................................................18

Fed. R. Civ. P. 34(b) .............................................................................................18

## PRELIMINARY STATEMENT

Plaintiff Glen W. West, Sr. ("West" or "Plaintiff") submits this brief in opposition to Defendant General Motors LLC's ("GM" or "Defendant") Motion to Compel Arbitration and to Dismiss Plaintiff's Verified Complaint or, in the Alternative, Stay the Action (hereinafter, "Motion to Compel"), and in support of his Cross-Motion for Expedited Discovery.  As set forth below, GM's Motion to Compel should be denied because the scope of West's claims do not fall within the arbitration agreement. Indeed, as set forth in more detail below, the Arbitration Agreement is in direct conflict with the parties' Dealer Sales and Service Agreement, which controls the parties' franchise relationship.  Further, recent developments necessitate that West cross-move for expedited discovery, limited in scope to narrow issues relating to an application for preliminary injunction for reinstatement to the board of directors of Superior Chevrolet.

## PROCEDURAL HISTORY

West commenced this action against GM by filing a Verified Complaint, in the Superior Court of New Jersey, Chancery Division, Mercer County, together with an application for an Order to Show Cause, seeking temporary restraints, on February 14, 2011.

On February 15, 2011, GM filed a Notice of Removal based on diversity grounds (Dkt. No. 1). Upon removal of this matter to the District Court of New

Jersey, this Court scheduled a hearing on West's application on February 18, 2011, after providing GM the opportunity to submit an opposition on or before February 17, 2011.   At the same time that GM filed its opposition papers to West's application on February 17, 2011 (Dkt. Nos. 7, 9), GM also filed the present motion to compel arbitration and to dismiss West's complaint or, in the alternative, stay the action (Dkt. Nos. 6, 8).

After the temporary restraints hearing, the Court entered an Order on February 25, 2011, granting in part and denying in part West's application for a temporary restraining order.  Specifically, the Court ordered that GM was enjoined from: selling or transferring West's stock in Superior Chevrolet, or otherwise terminating or modifying the existing dealership agreement, or entering into a new dealer sales and service agreement with any third party regarding the Superior Chevrolet dealership, or changing the ownership of Superior Chevrolet, or engaging in any conduct that would frustrate the intent of the Court's ruling on February 18, 2011.  Further, the Court ordered GM to produce to West a complete copy of the Dealer Sales and Service Agreement.  *See* Certification of Marc E. Wolin ("Wolin Cert."), Esq., Exhibit A.

## FACTUAL BACKGROUND

This Court is already familiar with the factual background of West's claims in this action, which have been previously discussed in detail in West's application

for the Order to Show Cause.  In addition to the relevant factual background discussed therein, the following additional relevant information is relevant to the Court's consideration of GM's Motion to Compel and West's Cross-Motion for Expedited Discovery.

**The 2010 Dealer Sales and Service Agreement**

West asserts claims, *inter alia*, based on the New Jersey Franchise Practices Act which arise out of a GM Dealer Sales and Service Agreement ("Dealer Agreement") executed effective November 1, 2010, which is the most recent agreement between the parties and governs the franchise relationship between them.  Nowhere does the 2010 Dealer Agreement mention a mandatory arbitration agreement or provision.  In fact, while the 2010 Dealer Agreement incorporates Standard Provisions and Related Addenda, as set forth below, it does <u>not</u> incorporate by reference the 2008 Arbitration Agreement.  Paragraph 5 of the Dealer Agreement, titled "Additional Agreements and Understandings", provides that "[t]he following agreement(s) are hereby incorporated by reference into this Agreement", yet identifies <u>no</u> other agreements or understandings whatsoever.  *See* 2010 Dealer Agreement at ¶5.

In contrast, the Dealer Agreement specifically incorporates by reference "Standard Provisions and Related Addenda".  *See* Wolin Cert., Exh. A., p. 1 ("The Standard Provisions and all of the related Addenda are hereby incorporated as part

of this Agreement.").   These Standard Provisions and Related Addenda are appended to the Dealer Agreement (collectively, the "Dealer Agreement").  *Id.*

Nothin in the Standard Provisions mandates that this mater be arbitrated. Moreover, several of the Standard Provisions support that GM's conduct here was in violation of the Dealer Agreement and the New Jersey Franchise Practices Act. For example, Article 13 of the Standard Provisions of the Dealer Agreement, "Breaches and Opportunity to Remedy," describes fourteen actions that constitute breaches of the Dealer Agreement.  It further provides that a dealer "will be given the opportunity to respond in writing within 30 days of receipt of the notice, explaining or correcting the situation to General Motors satisfaction."  *Id.* at 18. Only if the [d]ealer's response does not demonstrate that the breach has been corrected, or explain the circumstances to General Motors satisfaction" is termination warranted, "upon written notice to [d]ealer" and "effective 60 days following [d]ealer's receipt of the notice." *Id.* at 19 (emphasis added).  Article 14 of the Standard Provisions of the Dealer Agreement similarly identifies certain acts or events which permit GM to terminate the Dealer Agreement, such as the dealer's insolvency, felony conviction, or submission of false applications or claims for payment, credit, discount, or allowance. *Id.* at 19-20.  GM did not follow the procedure outlined in the Dealer Agreement, including the notice, opportunity to cure, and 60 day written notice.  Notwithstanding the foregoing,

West addressed the overwhelming majority of the allegations against him by GM prior to the February 8, 2011 constructive termination.

As to arbitration, Article 16 of the 2010 Standard Provisions of the Dealer Agreement directly conflicts with the 2008 Arbitration Agreement. Specifically, Article 16 requires <u>mandatory</u> mediation under the General Motors Dispute Resolution Process and expressly provides for the filing of an action in <u>court</u>.[1] *Id.* at 25. In relevant part, it states as follows:

> Dealer and General Motors recognize that it is desirable to resolve disputes in a fair, prompt, and cost efficient manner. Therefore, except for the matters specified below, and except as otherwise specifically agreed upon in writing between Dealer and General Motors, Dealer and General Motors agree to mediate any dispute arising under this Agreement or applicable law using the General Motors Dispute Resolution Process then in effect…
>
> ***
>
> Dealer or GM may file simultaneously *with a court* or administrative agency if necessary to retain its rights under applicable law.
>
> ***
>
> Mediation under the General Motors Dispute Resolution Process is *mandatory*, but mediation is not binding on the parties unless the parties agree upon a solution. If a dispute is not resolved through mediation, Dealer and General Motors *may* agree to resolve this dispute through

---

[1] Article 16 excludes certain matters from mandatory mediation; however, none of those matters apply here.

5

> voluntary binding arbitration available under the General
> Motors Dispute Resolution Process.

*Id*. at 25 (emphasis added).  The express terms of the 2010 Dealer Agreement specifically permit a party to file any matter in court and do <u>not</u> require arbitration. This provision is irreconcilable with the 2008 Arbitration Agreement and further demonstrates that the 2010 Dealer Agreement was intended to supersede the 2008 Arbitration Agreement.

### The 2008 Stockholders Agreement and Arbitration Agreement

In or about 2008, Superior Chevrolet began experiencing a decline in profitability like many automobile dealerships throughout the country as a result of the unprecedented economic downturn.  This decline intensified as a result of GM's well-documented financial difficulty and eventual bankruptcy and reorganization.   To inject additional capital into Superior Chevrolet, West contributed substantial personal funds.  Despite West's efforts, on December 17, 2008, he surrendered his 100% ownership of the dealership and agreed to sell a portion of the shares in Superior Chevrolet to GM to raise capital for the dealership (the "2008 Stockholders Agreement").  A copy of the 2008 Stockholders Agreement is attached as Exhibit B to the Wolin Cert.  In connection with that transaction, GM directed West to sign an Arbitration Agreement or lose GM's participation in the stock investment. Accordingly, on December 17, 2008, West signed the Arbitration Agreement, which is referenced in the 2008 Stockholders

Agreement at ¶2.2(e). A copy of the 2008 Arbitration Agreement is attached as Exhibit C to the Wolin Cert.

**The 2010 Stockholders Agreement**

Subsequently, on January 28, 2010, West agreed to enter into a new Stockholders Agreement which terminated the first Stockholder Agreement. A copy of the 2010 Stockholders Agreement is attached as Exhibit D to the Wolin Cert. The 2010 Stockholders Agreement expressly supersedes the 2008 Stockholders Agreement. *Id.* at §10.1 (stating "[t]his Agreement comprises the complete and entire understanding between the parties with respect to the subject matter of this Agreement and supersedes any and all prior written or oral, or contemporaneous oral, agreements between or among them."). Unlike the 2008 Stockholders Agreement which contained an arbitration provision, the 2010 Stockholders Agreement does <u>not</u> refer to the 2008 Arbitration Agreement and is silent on the issue, as is the 2010 Dealer Agreement.

## <u>LEGAL ARGUMENT</u>

## I.   The Arbitration Agreement Does Not Govern West's Claims Against GM

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, governs the application and interpretation of arbitration clauses in commercial contracts for both state and federal courts. *Perry v. Thomas,* 482 U.S. 483, 489, 107 S.Ct. 2520, 2525, 96 L.Ed.2d 426 (1987). The FAA provides that "a party aggrieved by the

alleged ... refusal of another to arbitrate under a written agreement for arbitration may petition [a] United States district court ... for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. The FAA directs federal courts to stay legal proceedings when a particular dispute is found to be subject to contractual arbitration. *Id.* § 3.

While there is generally considered to be a strong federal policy favoring arbitration, that policy is tempered by the principle that the law does not compel a party to submit a dispute to arbitration unless he has contractually agreed to do so. *United Steelworkers v. Warrior and Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S. Ct. 1347, 1353 (1960). A court also may not expand the application of an arbitration clause beyond its intended scope. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943, 115 S.Ct. 1920, 1923, 131 L.Ed.2d 985 (1995).

Moreover, the issue of arbitrability is "a matter to be determined by the courts on the basis of the contract entered into by the parties." *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 241, 82 S. Ct. 1318, 1320 (1962). Thus, when presented with a question of arbitrability, the court will defer to the parties' intent to determine: (1) whether a valid arbitration agreement exists; and (2) whether the scope of the parties' dispute falls within that agreement. *AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 649, 106 S.Ct. 1415, 1418 (1986).

As set forth below, GM's Motion to Compel Arbitration should be denied because West's claims do not fall within the scope of the 2008 Arbitration Agreement. For that same reason, GM's Motion to Dismiss West's claims, or in the alternative, to stay the action, should be denied as well.

### A.    The Scope of West's Claims Do Not Fall Within the Arbitration Agreement

The heart of West's claims arise from GM's improper constructive termination of the franchise relationship in violation of the New Jersey Franchise Practices Act and in breach of the 2010 Dealer Agreement.[2] Even though Superior Chevrolet is technically still operating, there was undoubtedly a constructive termination of the franchise relationship of which West was an integral component, and it is undisputed that he has standing under the New Jersey Franchise Practices Act because his injuries are separate and distinct from Superior. *See Darrick*

---

[2] In determining whether a choice-of-law provision in a contract is enforceable, federal courts sitting in diversity apply the choice-of-law rules of the forum state. *Gibbs ex Rel. Gibbs v. Carnival Cruise Lines*, 314 F.3d 125, 131 (3d Cir. (N.J.) 2002). Regardless of any contractual choice of law provisions, it is clear that New Jersey law applies under the "most significant relationship" test. *See P.V. ex rel. T.V. v. Camp Jaycee*, 197 N.J. 132, 136 (2008) (utilizing the Second Restatement's "most significant relationship" test to determine what law should apply); *Instructional Systems, Inc. v. Computer Curriculum Corporation*, 130 N.J. 324, 341-42 (1992) (relying on Second Restatement and applying New Jersey franchise law despite a contractual choice of law provision.). In addition, it is well-settled that a choice of law provision alone will not abrogate the right of a franchisee located in New Jersey to invoke the protections of the Franchise Practices Act. *See Instructional Systems, Inc.*, 130 N.J. at 343-45. Plaintiff will submit supplemental briefing on the choice of law issue if the Court believes it would be helpful to its consideration of this motion.

*Enterprises v. Mitsubishi Motors Corporation*, 2007 WL 2893366 (D.N.J. 2007).

In addition, because GM held a majority share of the dealership and improperly

ousted West, it would be absurd for the GM-controlled dealership to initiate a

Franchise Practices Act (or other) claim against itself. *See Kavanaugh v. Ford*

*Motor Co.,* 353 F.2d 710 (7th Cir.1965) (holding that because Ford owned all of

the voting stock in the dealership corporation, the only way for the dealership to

avail itself of the protections of the Automobile Dealers Day in Court Act would

be to "pierce the corporate veil" and allow the individual dealer/operator to protect

the dealership's interests).

When GM constructively, circuitously and indirectly terminated West's

franchise relationship and took away his dealership by relying upon the 2010

Stockholders Agreement, GM was not insulated from the requirements of the 2010

Dealer Agreement and the Franchise Practices Act, both of which required, among

other things, 60 day written notice in advance of termination.   Indeed, a

franchisor's capricious termination of a franchise is the primary concern of the Act,

which is remedial in purpose and focuses on the need to protect franchisees from

inequitable treatment by economically more powerful franchisors. *See Westfield*

*Centre Serv. Inc v. Cities Serv. Oil Co.*, 86 N.J. 453, 464-465 (1981).

As this Court recognized at the hearing on West's temporary restraining

order, *Shell Oil Company v. Marinello*, 63 N.J. 402 (1973) is a leading Supreme

Court of New Jersey case on franchise law. *Shell Oil* held that a franchisor cannot rely upon an ancillary agreement to circumvent the Franchise Practices Act's requirements. *Id*. at 410-11. But this is exactly what GM is trying to do. The Supreme Court flatly rejected Shell's argument that its termination of a lease agreement with Marinello, a franchisee, was independent of its dealer agreement with Marinello, calling it "pure sophistry" because the two agreements were "part of an integrated business relationship." *Id*. at 407. Thus, when the Court concluded that Shell had not complied with the provisions of the Franchise Practices Act, it also held that Shell did "not have the unilateral right to terminate, cancel or fail to renew . . . the lease."[3] *Id*.

The core of GM's argument for its constructive termination of West's franchise relationship is that West engaged in fraud, self-dealing and other misconduct. However, GM's own documents confirm that the overwhelming majority of the alleged irregularities underlying these allegations were, in fact, remedied prior to the February 8, 2011 constructive termination. *See*, *e.g.*, January 21, 2011 Letter from GM to West, attached as Exhibit D to the Verified Complaint; Affidavit of Tim Rinke to Defendant's Opposition to Plaintiff's Order

---

[3] While the Court noted that the lease between the parties antedated the effective date of the New Jersey Franchise Practices Act, the Court concluded that the Act "merely put into statutory form the extant public policy of this State" and accordingly held, *inter alia*, that such public policy required that a requirement of termination for good cause (identical to the Act's requirement) be read into the lease and franchise agreements. *Shell Oil*, 63 N.J. at 410-411.

to Show Cause Application, Exh. B, December 14, 2010 Special Meeting Minutes at 5 (wherein GM conceded that West "was able to verbally explain most of the expenses presented").  The 2010 Dealer Agreement addresses the requirement that notice and an opportunity to cure certain acts be provided before GM can proceed with termination. Wolin Cert., Exh. A, Standard Provisions at 18-19.  GM's efforts to divert the Court's attention away from the 2010 Dealer Agreement despite its clear application is yet another example of its improper attempt to carve itself out of the enforceable provisions of the 2010 Dealer Agreement, and to instead rely upon a document that was not part of the Dealer Agreement.[4]

In *Fit Tech, Inc. v. Bally Total Fitness Holding Corp.,* 374 F.3d 1, 9-10 (1st Cir. 2004), the court refused to apply a general arbitration clause in an employment contract to claims made under an asset purchase agreement between same parties. In that case, the arbitration clause in the employment contract provided that "[a]ny controversy or claim arising out of or relating to the [employment agreement], or the breach thereof, shall be settled by arbitration." *Id.* at 9. Bally argued that this clause extended to claims made under the asset purchase agreement because the employment agreements were referenced in, and required by, the purchase

---

[4] Unlike the plaintiff in the inapposite case cited by GM, *Arciniaga v. General Motors Corp.*, 460 F.3d 231 (2d Cir. 2006), who conceded that his claims arose out of only the amended stockholders agreement and *not* the dealer sales and service agreement, the heart of West's claims arise from the 2010 Dealer Agreement. *Id.* at 235.

agreement; certain provisions in the purchase agreement were related to the plaintiff's continued employment; and the integration clause in the purchase agreement referred "to the purchase agreement and documents referred to in it as comprising the complete and exclusive agreement between the parties." *Id.* at 10. The court recognized that there were inter-relationships between the agreement and found that they related to the same business sale and one document provided context for the other.

Significantly, however, the court found that the two documents dealt with different aspects of the sale, one addressed asset purchase and the other addressed subsequent employment. As the court explained, "[n]o one can seriously argue that clauses can be plucked at random from one agreement and inserted into the other." *Id.* The court found that the general arbitration clause appeared only in the employment agreements, and referred to disputes arising under or related to that agreement. Further, the court explained, not only was an arbitration clause omitted from the purchase agreement ("although it would have been child's play to insert it there"), but also the purchase agreement contained a different, and narrower, dispute resolution process, that was inconsistent with the arbitration clause in the employment agreement. *Id.* The court thus rejected Bally's argument that the arbitration clause in the employment contract covered claims brought under the asset purchase agreement. *Id.* at 10-11.

The sound reasoning in *Fit Tech* should be applied to the case *sub judice*. As in *Fit-Tech*, the 2010 Dealer Agreement and the 2008 Arbitration Agreement contain separate dispute resolution processes – the recent 2010 Dealer Agreement requires mandatory nonbinding mediation before engaging in any arbitration, and expressly provides that either party to that agreement may simultaneously file an action in court to preserve their rights, while the 2008 Arbitration Agreement requires mandatory binding arbitration. If the 2008 Arbitration Agreement governs disputes arising out of the 2010 Dealer Agreement, then the mandatory mediation provision and the provision permitting the parties to raise disputes in Court in the 2010 Dealer Agreement would be superfluous. *See Fit Tech,* 374 F.3d at 10-11. In determining the clarity or ambiguity of the contract terms, however, a court should avoid interpreting contractual language so that a term of the contract is rendered meaningless or superfluous. *Penske Logistics, Inc. V. KLLM, Inc.,* 285 F.Supp.2d 468, 474 (D.N.J. 2003) ("[u]nder the principles of contract interpretation, a contract should <u>not</u> be given an interpretation which renders a term or terms superfluous or meaningless....") (internal citation omitted). *See also Restatement (Second) of Contracts, § 203* ("[A]n interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect...."). The only reasonable interpretation of the 2010 Dealer Agreement is to give meaning to

its dispute resolution provisions, which call for mandatory mediation and permit either party to simultaneously file a court proceeding.

Additionally, the more recent 2010 Dealer Agreement does not contain any references to the 2008 Arbitration Agreement, nor does it incorporate any of the arbitration provisions contained in that Agreement. In fact, Section Five of the Dealer Agreement provided GM with such an opportunity, yet no "Additional Agreements and Understandings" were included.  When GM demanded that West execute the Dealer Agreement in 2010, it was free to add a provision which would have directed that any disputes under the Dealer Agreement would be submitted to arbitration.  Had GM intended to submit to arbitration any disputes arising out of the 2010 Dealer Agreement under the 2008 Arbitration Agreement, it could have simply inserted either in Paragraph 5 of the 2010 Dealer Agreement or in the Standard Provisions.  GM did neither, and having failed to do so, GM cannot rely on the 2008 Arbitration Agreement for authority to submit the present disputes to arbitration.

Similarly, even if West's claims are deemed to arise out of the 2010 Stockholders Agreement in addition to the 2010 Dealer Agreement, the 2008 Arbitration Agreement does not apply.  Like the 2010 Dealer Agreement, the 2010 Stockholders Agreement is silent as to the application of any arbitration provision or agreement.   Moreover, unlike the 2008 Stockholders Agreement, which

expressly incorporated language from the 2008 Arbitration Agreement, the 2010 Stockholders Agreement omits any reference to arbitration, which suggests that GM did not intend for it to apply to thereto. *See Verizon New Jersey, Inc. v. DMJM Harris, Inc.*, 2009 WL 1283173, *4 (D.N.J. May 1, 2009) (stating that under New Jersey law, "[t]he general rule is that a subsequent contract covering the same subject matter and made by the same parties, but containing terms inconsistent with the former contract so that the two cannot stand together, rescinds, supersedes and substitutes for the earlier contract and becomes the only agreement on the part of the parties on the subject matter.") (internal citation omitted). To the extent there is any ambiguity, it should be construed against the drafter. *Atlantic City Racing Ass'n v. Sonic Financial Corp.*, 90 F.Supp.2d 497, 506 (D.N.J. 2000) (internal citation omitted).  In addition, the 2010 Stockholders Agreement contains a merger clause.   Under basic contract interpretation principles, when a contract has a merger clause stating that the agreement between the parties is the final agreement, the prior contract is superseded by the later contract and is unenforceable. *See Verizon New Jersey, Inc.*, *supra*.

Under these circumstances, as a matter of law, the 2008 Arbitration Agreement is not controlling with respect to either the 2010 Dealer Agreement or the 2010 Stockholders Agreement. *See Fit Tech,* 374 F.3d at 9-10.  Accordingly, the Court should deny GM's Motion to Compel. Finally, even if, *arguendo*, all but

16

one of West's claims were governed by the arbitration agreement, the action cannot be dismissed, as GM seeks. Courts may enter a stay where the complaint alleges causes of action that are not subject to arbitration in addition to those that the court concludes must be arbitrated.  *See Central Jersey Freightliner, Inc. v. Freightliner Corp.*, 987 F.Supp. 289, 300 (D.N.J. 1997).  Requiring West to arbitrate all of his causes of action, including his claims for injunctive relief, runs afoul of well-established Third Circuit law.  *See*, *e.g., Ortho Pharmaceutical Corp. v. Amgen, Inc.*, 882 F.2d 806, 811-13 (3d Cir. (Del.) Aug. 17, 1989).

## II.    The Federal Arbitration Act Does Not Preclude This Court's Ability to Consider and Grant Preliminary Injunctive Relief Under the NJFPA

As set forth above, the 2008 Arbitration Agreement is not enforceable and therefore, this Court may enter preliminary injunctive relief.  *See Ortho*, 882 F.2d at 811-13.  In addition, as this Court has already determined, even if the 2008 Arbitration Agreement is deemed enforceable (which it is not), the Court still has the authority to enter preliminary injunctive relief under well-established Third Circuit authority, which holds that the existence of an arbitration agreement alone does not displace the Court's jurisdiction to consider and award preliminary injunctive relief.  *See Ortho*, 882 F.2d at 811-813.  See *also Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.3d 1373 (6th Cir. 1995). Indeed, the Court has already granted the present temporary restraining order pursuant to this authority.

### III.   West is Entitled To Expedited Discovery

West seeks limited expedited discovery from GM with respect to his forthcoming application for a preliminary injunction. Specifically, the following is requested in connection with the events of February 8, 2011: (i) documents including meeting minutes and communications of the Motors Holding Investment and Finance Committees regarding GM's decision to provide no advance notice to West and forcibly remove him from the premises on February 8, 2011; (ii) GM's policies or procedures with respect to impaired dealerships that were in effect during the applicable time period; (iii) deposition(s) of the GM individuals who were involved in the decision to take the above actions; and (iv) a subpoena for Superior Chevrolet's Wachovia Bank records regarding the September 2010 working capital loan account transactions and deposition of the bank representative involved in the transactions. *See* Proposed Expedited Document Requests, attached as Exhibit E to the Wolin Cert.  This information is particularly critical given that most of the alleged allegations against West were resolved and therefore, moot, by February 8, 2011, when GM constructively terminated West's franchise. Thus, the pretextual nature of the termination further demands limited, narrowly tailed discovery to permit West to make his application for preliminary injunctive relief for reinstatement to the board of directors, as discussed below.

The Federal Rules of Civil Procedure authorize a court to permit parties to depart from the usual schedule and sequence of discovery where, as here, a party will be prejudiced by the normal pace of pretrial procedures. Fed. R. Civ. P. 26(d), 30(a), and 34(b). Such discovery "will be appropriate in some cases, *such as those involving requests for a preliminary injunction*." Fed. R. Civ. P. 26 Advisory Committee Note (emphasis added). In addition, the District Court has routinely permitted expedited discovery to permit the parties to prepare for a hearing on a preliminary injunction in order to prevent further injury to the plaintiff in cases involving violations of the Franchise Practices Act. *See eg., Atlantic City Coin & Slot Service Co., Inc. v. IGT*, 14 F.Supp.2d 644, 646 (D.N.J. 1998) (referencing the parties' engagement in expedited discovery); *Beilowitz v. General Motors Corp.*, 233 F.Supp.2d 631, 632 (D.N.J. 2002) (same).

As stated in *Better Packages, Inc. v. Zheng,* 2006 WL 1373055, at *2 (D.N.J. May 17, 2006), there are two standards used to determine whether expedited discovery is appropriate. *Id.* The first is the so-called "reasonableness standard," which "requires the party seeking the discovery to prove that the requests are reasonable under the circumstances." *Id.* The second standard is a multi-part test set forth in *Notaro v. Koch,* 95 F.R.D. 403 (S.D.N.Y. 1982) and requires a plaintiff seeking expedited discovery to show: (1) irreparable injury; (2) some probability of success on the merits; (3) some connection between the

expedited discovery and the avoidance of irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury the defendant will suffer if the expedited relief is granted. *Id.* at 405; *GucciAmerica, Inc. v. Daffy's, Inc.*, 2000 WL 1720738, at \*5-6 (D.N.J. Nov. 14, 2000) (applying *Notaro* factors in denying a request for Gucci's expedited discovery because the request for expedited discovery was not in aid of an anticipated application for preliminary injunctive relief and because the expedited discovery would provide Gucci with the information it desired as the ultimate goal of its litigation).  As set forth below, West satisfies either standard for obtaining expedited discovery but the reasonableness test is applicable here.

The reasonableness test is appropriate where, as here, "a plaintiff seeks expedited discovery in order *to prepare for a preliminary injunction hearing*".  *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor,* 194 F.R.D. 618, 624 (N.D.Ill. 2000) (internal citation omitted) (emphasis in the original); *Daffy's, Inc.*, 2000 WL 1720738, at \*6 (noting that some courts have found *Notaro's* four-factor test inappropriate where the discovery was sought only to gather evidence to support preliminarily injunctive relief.)  Where the expedited discovery is sought for the purpose of making an application for preliminary injunction, it "does not make sense to use preliminary injunction analysis factors to determine the propriety of an expedited discovery request. Rather…, it makes sense to examine

the discovery request, as we have done, on the entirety of the record to date and the *reasonableness* of the request in light of all of the surrounding circumstances." *Merrill Lynch*, 194 F.R.D. at 624. Courts have been similarly guided by a "good cause" test akin to the reasonableness inquiry made in *Merrill Lynch*, which weighs the need for expedited discovery by considering the overall administration of justice against the prejudice to the responding party. *Better Packages, Inc.*, 2006 WL 1373055, at *3 (internal citations omitted).

Here, West is seeking the expedited discovery to support his application for preliminary injunctive relief to be reinstated to the Superior Chevrolet board of directors. In addition, the narrow scope of the proposed expedited discovery, together with the absence of any prejudice to GM, weigh in favor of West. Further, courts have held that "[e]xpedited discovery is appropriate where it would 'better enable the Court to judge the parties' interests and respective chances for success on the merits at a preliminary injunction hearing." *Philadelphia Newspapers Inc. v. Gannett Satellite Information Network.*, 1998 WL 404820 at *2 (E.D.Pa. July 15, 1998) (internal citation omitted). If narrowly tailored to fit the needs of a preliminary injunction hearing, leave to conduct expedited discovery should be granted. *Entertainment Tech., Corp. v. Walt Disney Imagineering*, 2003 WL 22519440 at *3 (E.D.Pa. Oct. 2, 2003). For these reasons, expedited discovery is reasonable in this matter and should be permitted.

21

Even if the *Notaro* standard applies to West's request for expedited discovery, West has satisfied its requirements. Irreparable harm will result if expedited discovery is not granted. It is evident that normal discovery procedures are inadequate at this time because all of the information central to West's claims is entirely within GM's possession, custody and control and can easily be lost, especially during this transition period at the dealership in West's forced absence. Without an independent accounting at the present time, it will be impossible for anyone to be able to compare the *status quo* as it existed on February 7, 2011 before GM constructively terminated the franchise relationship and removed West, with any *post-hoc* determination of the state of the dealership. It is essential that the records be preserved and not lost or altered or destroyed, inadvertently or otherwise, and that West have expedited access to these records for the limited purpose of making an application for preliminary injunctive relief. Prompt access to these records is particularly critical given the abrupt circumstances of West's termination, which deprived him of access to any of the records of the dealership or the ability to obtain essential information in connection with the dealership, leaving him at a singular disadvantage. Such rank inequity cannot be permitted to stand, where the prejudice to GM is nonexistent and the prejudice to West is extreme.

In addition, if this Court compels arbitration, West may not be afforded complete discovery as he would under the Federal Rules of Civil Procedure, or be protected by the Federal Rules' document preservation obligations imposed upon GM, which further highlight the need of preserving the documents and providing West with access now.  Indeed, the loss of documents relevant to West's claims would constitute irreparable harm, in and of itself.  *See Lanza v. New Global Communications, Inc.*, 2006 WL 2759215, at * 4 (N.J. Super. Ch.. Oct. 21, 2005) (ordering the continuation of temporary restraints to preserve and provide access to records where defendant had control of all of the records relevant to plaintiff's claims).  Thus, there is similarly a connection between the documents requested and the avoidance of irreparable injury.

Plaintiff satisfies the second prong of the *Notaro* test in that he has shown some probability of success on the merits.  It is undisputed that GM failed to provide the 60 day written notice of termination as required by both the New Jersey Franchise Practices Act and the 2010 Dealer Agreement. In addition, as will be demonstrated in West's application for preliminary injunctive relief, it is evident that the *status quo* cannot be maintained at this time unless, *inter alia*, West is permitted to attend the meetings of the Board of Directors of Superior Chevrolet.  This is the only way to ensure that GM does not take any actions that jeopardize West's interests, such as the inadvertent loss of records that pertain to

West's claims, or taking steps to sell or transfer the dealership or the dealership property by considering offers from prospective buyers and/or franchisees.

West's reinstatement is necessary injunctive relief from the irreparable harm resulting from his loss of the franchise relationship in violation of GM's compliance with statutory and contractual obligations.  It is well-settled that the loss of a franchise may constitue irreparable injury justifying the issuance of injunctive relief.  *See Gelardi Corp. v. Miller Brewing Co.,* 421 F.Supp. 233, 236 (D.N.J. 1976) ("[T]he loss of business and good will, *and the threatened loss of the enterprise itself*, constitute irreparable injury to the plaintiff sufficient to justify the issuance of a preliminary injunction."); See also *Saturn of Denville v. General Motors Corp.,* 2009 WL 1545559, at *6 (D.N.J. May 29, 2009); *Semmes Motors, Inc. v. Ford Motor Co.,* 429 F.2d 1197, 1205 (2d Cir. 1970) ("[T]he right to continue a business in which [plaintiff] had engaged for twenty years ... is not measurable in monetary terms."); *Atlantic City*, 14 F.Supp.2d at 667 (noting with approval that "in the Third Circuit, *Semmes* has given rise to a significant progeny of courts following its lead in concluding that the termination of a long-standing business relationship can result in irreparable harm.").

West did not simply lose his employment as a result of GM's actions.  West lost much more – his livelihood, his business, and his ability to continue making a living as a GM dealer – all of which constitute irreparable harm.  *See Gelardi*

*Corp.*; *Saturn of Denville*; *Semmes Motors, Inc.*; *Atlantic City*, *supra*.  For the past decade, West has been a GM dealer exclusively.  GM unilaterally ousted West and constructively terminated his franchise relationship without the 60 day notice mandated under both the 2010 Dealer Agreement and the New Jersey Franchise Practices Act – provisions that were intended to protect him as a franchisee from such capricious action.  Unlike an employee who is terminated and can seek similar employment elsewhere, West does not have the ability to simply enter into a new franchise with another automobile manufacturer, especially while GM's meritless allegations of West's misconduct remain unredressed.  Absent this Court's intervention, West will remain without relief and without any ability to monitor his significant interest in the dealership that was improperly stripped by GM, for the duration of the adjudication of his claims against GM.

By contrast, West's reinstatement as a board member will have no effect on GM or the day-to-day operations of the dealership.  In fact, GM will suffer no prejudice or inconvenience from West being permitted to monitor and participate as a board member because GM will exercise its two votes against West's one vote, thereby permitting GM to do whatever the board deems is in the best interest of the dealership.  GM's ability to continue making board decisions will remain unaffected.  The only thing that will change will be West's ability to monitor the

decisions that impact his interest in the dealership, which are taking place in his prolonged absence from the day-to-day operations of the dealership.

Finally, there is no harm or prejudice to GM if the expedited discovery is granted in this matter.  In fact, the prejudice runs the other way, to West, who was deprived of relevant records during his forcible removal from Superior Chevrolet and has been forced to rely upon the intervention of this Court to access even the most fundamental document governing the franchise relationship between the parties, the 2010 Dealer Agreement.

For all of these reasons, West respectfully requests that this Court grant his application for limited, expedited discovery for the purpose of West's application for a preliminary injunction to be reinstated to the Superior Chevrolet Board of Directors.

## CONCLUSION

For all of the reasons set forth herein, Glen W. West, Sr. respectfully requests that this Court deny General Motors, LLC's Motion to Compel Arbitration and to Dismiss the Complaint or, in the Alternative, Stay the Motion, and grant West's Cross-Motion for Expedited, Limited Discovery.


Dated: March 9, 2011                    Respectfully submitted,

                                        SAIBER LLC

                                        By: /s/ Marc E. Wolin
                                        Marc E. Wolin (mew@saiber.com)
                                        Una Y. Kang (ukang@saiber.com)
                                        18 Columbia Turnpike, Suite 200
                                        Florham Park, NJ  07932
                                        Tel: (973) 622-3333
                                        Fax: (973) 622-3349