NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| GLEN W. WEST, SR., | : | |
| Plaintiff, | : | Civil Action No. 11-819 (JAP) |
| v. | : | **OPINION** |
| GENERAL MOTORS LLC, | : | |
| Defendant. | : | |

PISANO, District Judge.

Before the Court is a motion to compel arbitration filed by Defendant General Motors LLC ("GM"). Plaintiff Glen W. West, Sr. opposes the motion. For the following reasons, the Court will grant the motion.

## I.   PROCEDURAL HISTORY

On February 14, 2011, Plaintiff filed a Verified Complaint ("Complaint") against GM in the Superior Court of New Jersey, Chancery Division, Mercer County together with an Order to Show Cause seeking temporary restraints. The Complaint requested the issuance of a preliminary and permanent injunction to prevent GM from selling or otherwise disposing of the car dealership, Superior Chevrolet, Inc. (the "Dealership"), located at 200 Renaissance Boulevard in Lawrenceville, New Jersey. GM timely removed the action to this Court based on diversity of citizenship. On February 17, 2011, GM filed its motion to compel arbitration or, in the alternative, stay the action. On February 18, 2011, the Court held oral argument on the motion seeking temporary restraints and entered an order on February 25 prohibiting GM from selling or otherwise disposing of the car dealership.

## II.     FACTUAL BACKGROUND

According to his Complaint, Plaintiff was a shareholder and franchisee of GM and the Operator, President, and Director of the Dealership until February 8, 2011.  On that day, West was stripped of his stock, removed as President, Director, and Operator of the Dealership, and forced from the premises of the Dealership.  The divestment and removal followed allegations by GM that Plaintiff had engaged in self-dealing and failed to maintain books and records according to approved procedures.  In his Complaint, however, Plaintiff claims that such allegations were a pretext to assume his interest in the Dealership and that GM inaccurately valued his stock during the divestment and improperly removed Plaintiff from the premises of the Dealership.  Plaintiff seeks his reinstatement as the President and Director of the Dealership, in which GM is the majority shareholder and investor.

During the course of their business relationship, the parties entered numerous agreements that defined the terms of their relationship and set forth means by which disputes must be resolved.  On December 17, 2008, Plaintiff and GM entered into their first Stockholders Agreement in which the parties agreed to certain investment obligations with respect to the Dealership.  *See* Def. Mot. to Compel (Docket Entry no. 8), Exh. B.  Contemporaneously, the parties entered into an Arbitration Agreement dated December 17, 2008 in which they agreed to binding arbitration of all disputes arising from the parties' investment in the Dealership.  *See* Def. Mot. to Compel (Docket Entry no. 8), Exh. C (hereinafter "Arb. Agrmt.").  On January 28, 2010, the parties entered into a new Stockholders Agreement based on a reorganization of the parties' stock.  *See* Def. Mot. to Compel (Docket Entry no. 8), Exh. D (hereinafter "2010 Stockholders Agreement").  Finally, on November 1, 2010, a Dealer Sales and Service

Agreement ("DSSA") became effective, defining the relationship between GM and the Dealership, of which Plaintiff was the Operator.  *See* Pl. Opp'n (Docket Entry no. 17), Exh. A.

### III.  DISCUSSION

The parties contest under which agreement the dispute between them arises. GM asserts that the Arbitration Agreement applies to Plaintiff's claims and that the case should be dismissed and sent to arbitration accordingly.  Plaintiff, on the other hand, contends that his claims do not fall within the scope of the Arbitration Agreement; rather, they are governed by the DSSA and the 2010 Stockholders Agreement.  The Court agrees with GM for the following reasons.

The Federal Arbitration Act ("FAA") governs agreements to arbitrate.  Section 2 of the FAA provides that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The FAA aims "to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts."  *Gay v. CreditInform*, 511 F.3d 369, 378 (3d Cir. 2007) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)).  The FAA evinces a "federal policy favoring arbitration."  *Johnson v. W. Suburban Bank*, 225 F.3d 366, 371 (3d Cir. 2000).  Due to the strong presumption in favor of arbitration, a court must construe all doubts in favor of arbitration.  *Great W. Mortgage Corp. v. Peacock*, 110 F.3d 222, 228 (3d Cir. 1997).  To enforce an arbitration agreement under section 2 of the FAA, the Court must decide only "whether there was an agreement to arbitrate, and if so, whether the agreement is valid."  *Id.*

As a threshold matter, the Court finds that there was an agreement to arbitrate between Plaintiff and Defendant and that the agreement is subject to the FAA.  Indeed, neither party

contends otherwise. Rather, GM submits that Plaintiff's claims asserted in this action implicate the Arbitration Agreement and Plaintiff contends that, despite its existence, his claims fall outside the scope of the Arbitration Agreement. Thus, the Court must determine whether Plaintiff's claims fall within the scope of the Arbitration Agreement.

As set forth in the Arbitration Agreement, the parties agreed to arbitrate:

> any and all claims, demands, causes of actions, disputes or controversies against any other Party . . . which any Party had prior to executing this Arbitration Agreement, now has or may ever have, arising from or related to Operator's investment or attempt to invest in the Dealer Company, the financial performance of the Dealer Company, the business decisions or practices of GM, Operator, and/or Dealer Company . . . .

Arb. Agrmt. ¶1. Plaintiff's divestment and removal as Operator, Director, and President clearly arose from his "investment or attempt to invest in the Dealer Company, the financial performance of the Dealer Company, the business decisions or practices of GM, Operator, and/or Dealer Company." GM's decision to purchase Plaintiff's stock, as contemplated in the 2010 Stockholders Agreement, *see* 2010 Stockholders Agreement, Art. III, and its decision to remove Plaintiff from the Dealership were business decisions by GM, arising from its and Plaintiff's investments in the Dealership, and based on the business practices of Plaintiff. *See* Letter dated February 8, 2011, Compl., Exh. E. Indeed, in its letter to Plaintiff, dated February 8, 2011, GM explained its reasoning behind Plaintiff's divestment, citing:

> numerous examples of self-dealing and failure to maintain books and records, . . . such as, but not limited to, undocumented and questionable travel and entertainment expenses, co-mingling and misappropriation of funds . . . , and undocumented and questionable payments . . . to reduce outstanding balances on three credit cards that were not in the name of the Dealer Company.

*Id.* Such actions constituted business practices by Plaintiff, and GM's exercising of its option to buy his stock was also a business decision. Furthermore, Plaintiff's present claims regarding these actions, for which he seeks the reinstatement of his investment in the Dealership, obviously

4

arise from his investment in the Dealership. Accordingly, the dispute is governed by the Arbitration Agreement and must be submitted to arbitration according to the Arbitration Agreement.

Plaintiff contends that his claims instead fall under the scope of the DSSA or the 2010 Stockholders Agreement. He argues that because neither of those two agreements incorporate or otherwise reference the Arbitration Agreement, then the Arbitration Agreement does not apply to disputes arising under those agreements. Regardless of any references to the Arbitration Agreement in those agreements, however, the language of the Arbitration Agreement itself could not be any clearer: the parties agreed to arbitrate any claim arising from or related to "any other agreement entered into by, between and/or among the Operator, the Dealer Company, and/or GM, including any GM Dealer Sales & Service Agreements whether executed before or after this Arbitration Agreement . . . ." Arb. Agrmt. ¶1. Thus, the Arbitration Agreement applies to disputes arising under "other agreements," which here include the 2010 Stockholders Agreement and the DSSA. Accordingly, if, as Plaintiff contends, the present dispute arises under those agreements, then the Arbitration Agreement applies to the dispute as well and Plaintiff's claims must be submitted to arbitration.

## IV.   CONCLUSION

The Court concludes that the Arbitration Agreement applies to all of Plaintiff's claims. Accordingly, GM's motion to compel arbitration will be granted and Plaintiff's Complaint will be dismissed. An appropriate order shall issue.

/s/ JOEL A. PISANO
United States District Judge

Dated: June 7, 2011